### SAUL vs. HIS CREDITORS.

APPEAL from the court of the first district.

In case of exchange, if one of the parties loses that which he was to receive, he has a right to get back the object he gave in lieu of it, altho' the person with whom he contracts is insolvent.

PORTER, J. delivered the opinion of the court. The creditors of Benjamin Morgan opposed the tableau of distribution filed by the syndics, claiming a privilege on certain shares of bank stock.

The facts which have given rise to the contest are as follows:

On the 8th day of November, 1822, Saul borrowed from John Jacob Astor, of New York, sixty-four thousand dollars. Thirty thousand dollars of which were for his own use, and thirty-four thousand dollars for the use and account of Benjamin Morgan. In security for the payment of this money, Saul pledged stock of the Bank of Orleans, to the amount of $64,000—$40,000 of which stood

in his own name, and $24,000 in the name of Morgan. Morgan having thus become the debtor of Saul, transferred to him in the month of January then ensuing, stock to the amount of $10,000 to replace the same quantity of Saul's, which he had pledged on account of Morgan.

On the 30th January, 1824, Saul, by act *sous seing privé*, after reciting the facts above stated, declared that "I do assign, transfer and set over to the said Benjamin Morgan, in lieu of a part of the said ten thousand dollars of stock so transferred by him to me, all my right, title and interest in two certificates lodged with the said Astor, viz: No. 36, dated the 21st of January, 1822, for 83 shares of stock, and No. 826, dated the 8th of January, 1818, for 305 shares of stock; on all of which only $25 a share has been paid, amounting together to $9,700, with full power to claim all dividends arising on the said $9,700 of stock, and with right to demand the said certificates from the said Astor at the fulfilment of the agreement entered into by the said Saul and Morgan with him, and with the full power to transfer the same to himself, or any person or persons, re-

linquishing as I hereby do all right to ownership whatever in the said stock to the said Morgan, his heirs and assigns, having settled with the said Morgan for the difference between $9,700 and $10,000, by a separate transfer of stock, viz: 12 shares, on which is paid $25, say $300."

On the failure of Saul, Astor attempted to enforce his lien on the bank stock which had been pledged to him, but judgment was rendered against him in this tribunal, on the ground that his contract being one of pledge, it had no force or effect against creditors, unless recorded according to the laws of Louisiana. On this judgment the Bank of Orleans granted new certificates of the stock, and it was sold by the syndics of Saul's estate as making a part thereof.

The syndics of Morgan state in their petition that his estate has a privilege on the stock transferred by him to Saul, no price or consideration having been paid therefor, or that it belongs to them; or if this pretention cannot be supported in law, that then the stock transferred by Saul which was in the hands of Astor belongs of right to the creditors of Mor-

gan, and that they are entitled to the same by

right of property or privilege. Both these claims are denied by the representatives of Saul's estate, and they further demand, by way of reconvention, the sum of $500, being the amount of the dividends on the stock referred to in the opposition paid by error on the 4th of October, 1826, and 9th of January, 1827, to B. Morgan, agent for the syndics of his estate.

The court of the first instance sustained the opposition; being of opinion that the estate of Morgan could not be considered as creditors, that their claim was that of a vendor who reclaims the thing sold when the price has not been paid.

From this judgment the syndics of Saul have appealed, and demand a reversal of it, on the following grounds.

1st. The appellees have no privilege as vendors of the stock transferred to Joseph Saul on the 10th January, 1824, because this was not in fact a sale made at the period of transfer but simply a replacement of so much stock which Saul had pledged, belonging to himself, for the use of Morgan, and for which

Morgan had already received the value in the loan from Astor.

2d. If said transfer can be considered as a sale, then the price had already been paid by Saul and received by Morgan in the loan from Astor.

3d. The agreement of 31st January, 1824, is not *a transfer* by sale of 388 shares of bank stock, but merely an unexecuted *agreement to transfer*, which was never consummated, and can have no effect as regards creditors and third persons. Because there was no legal delivery, the titles, viz: the certificates, were with Astor, and no use was made by Morgan of the stock, as proprietor; it still continues to stand in Saul's name, he receiving the dividends up to the time of his failure. *C. Code,* 350, *art.* 81, 306. *arts.* 228, 229. *Lou. Code,* 2457.

4th. It is not a *dation en paiement*, delivery being of the essence of this contract. *La. Code,* 2626, 2627, 2628. *Pothier contrat de vente, No.* 601.

5th. It cannot operate as an assignment, because nothing has been done by Morgan to give it effect. No notice has been given to As-

tor, who had in his possession the certificates
of the Bank of Orleans, while Saul continued
to exercise acts of ownership, and receive the
dividends. *C. Code*, 368, *art.* 121 *&* 122.
*Lou. Code*, 1917. 4 *n. s*, 51. 5, *ibid.* 180.

6th. The agreement cannot have the effect
of a pledge, there being no delivery of the cer-
tificate of stock, and not having been register-
ed, in conformity with the provisions of the *C.
Code*, 446, *arts.* 6 *&* 7, 5 *n. s.* 609.

7th. The agreement to transfer being under
private signature unaccompanied by delivery,
has no date against third persons, and parol
proof cannot be admitted to establish its date
*C. Code* 306, *arts.* 228, 229, 2 *n. s.* 171, 4
*ibid.* 368, 5 *tit.* 423.

The counsel for the appellee has declined
controverting the truth of these propositions,
but has contended, that the contract was one
of exchange, and that Morgan not having re-
ceived what he was to obtain, in lieu of that
which he delivered, has a lien on the property
if yet in the hands of the syndics of Saul, or on
the proceeds if sold.

The counsel on the part of the appellant
urges, that this was not a contract of exchange.

Eastern Dist
*March* 1829.

SAUL
*vs.*
His Creditors

because that is the giving of one thing for another. That in this instance no such contract was contemplated when Saul pledged the stock for Morgan, and that the subsequent act of Morgan's replacing it did not make it an exchange. In support of this doctrine he has relied on *Lou. Code*, 2630. *Pothier traité de vente*, 617. *Domat, liv.* 1, *tit.* 3. *Par.* 5, *tit.* 6, 4.

These authorities, with the exception of Pothier, all concur in their definition of the contract of exchange, and nearly in the same language. They state it to be an agreement between the parties to give one thing for another, except it be money. Pothier states it to be a contract where they oblige themselves to give immediately one thing for another, and he lays a particular stress on the word *immediately* in the sentence next following the definition, by observing that if we agree that I will give you one thing for a certain price, in payment of which you will give me on your side another thing, the agreement is not a contract of exchange but of sale. It embraces a sale which I make of a thing belonging to me, and a *dation en paiement* on yours.

If a contract had been proved in this instance by which one of the parties agreed to give a thing for a certain price, and receive in payment for it another, as in the case put by the author, then clearly there would not have been a contract of exchange. So if any other contract had been shewn to have been in contemplation of the parties at the time Saul advanced the stock, Morgan replaced it, and Saul again conveyed stock to Morgan, we should have given to that contract its legal effect. But in the absence of any proof to the contrary, we must conclude that the acts of the parties conformed to their previous understanding, and that was done which had been contemplated to be done. The act of Saul in advancing the stock was in nothing inconsistent with the idea of exchange, and did not necessarily throw the transaction into another class of contracts. In this view of the case there was an exchange of the one parcel of bank stock for the other, and the stock given to Morgan having been taken by the syndics of Saul, Morgan's estate has a right to get back that which was given in lieu of it, or its value. *La. Code*, 2637, 3194.

It is therefore ordered, adjudged and de-

Eastern Dist
*March,* 1829.
creed, that the judgment of the district court be affirmed, with costs.

SAUL
*vs.*
His Creditors

*Slidell* for syndics of Saul—*Eustis* for syndics of Morgan.